Rockingham, June 5, 1951. }   No. 4042.

STATE *v*. ROBERT W. DERRICKSON.

STATE *v*. WILLIAM POULOS.

92

*Gordon M. Tiffany,* Attorney General, *Glenn Davis,* Law Assistant, and *Arthur J. Reinhart,* City Solicitor (*Mr. Tiffany* and *Mr. Reinhart* orally), for the State.

*Hayden C. Covington* (of New York) and *Henry M. Fuller* (*Mr. Covington* orally), for the defendants.

KENISON, J. The Bill of Rights of the Constitution of New Hampshire does not guarantee to every individual or to every group of individuals absolute liberty. "When men enter into a state of society, they surrender up some of their natural rights to that society, in order to ensure the protection of others; and, without such an equivalent, the surrender is void." N. H. Const. Part First, *Art.* 3rd. The rights of freedom of assembly, speech and worship are accorded a high place in and are specifically guaranteed by the New Hampshire Constitution and statutes implementing it. While these freedoms cannot be prohibited, they may be subjected to reasonable and nondiscriminatory regulation in order that the constitutional rights of others may be equally protected in the interest of public order and convenience.

The ordinance drawn in question in this case is copied from the statute which was construed as valid in *State* v. *Cox,* 91 N. H. 137, and affirmed by a unanimous court in *Cox* v. *New Hampshire,* 312 U. S. 569. The construction placed on the statute in that case (R. L., c. 174, ss. 2, 4) is the construction that must be given to sections 22 and 24 of the ordinance. "The discretion thus vested in the authority [city council] is limited in its exercise by the bounds of reason, in uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination. A systematic, consistent and

just order of treatment, with reference to the convenience of public use of the highways, is the statutory mandate. The licensing authority has no delegation of power in excess of that which the legislature granting the power has and the legislature attempted to delegate no power it did not possess." *State* v. *Cox, supra,* 143.

The defendants dismiss the applicability of this case briefly in the following manner: "The *Cox* case is distinguishable here because in this case the respondents have attempted to comply with the ordinance and offered to pay the necessary fee and expenses." It is doubtful that it makes any critical constitutional difference as to the validity of an ordinance or statute that there was no compliance in one case or attempted compliance in the other. However, we do not pause to examine this contention with any more detail than was advanced in its behalf since the defendants have chosen to place their chief reliance on the recent case of *Niemotko* v. *Maryland,* 71 S. Ct. 325, which will be hereinafter discussed.

We do not know the number of parks, public commons, public squares and other public grounds in the city of Portsmouth, although it is a matter of public knowledge that Goodwin Park is not the only one in the city (*Sherburne* v. *Portsmouth,* 72 N. H. 539) and that it is a small park. There is nothing to indicate that it has been used for religious meetings or sectarian purposes since it was donated to and dedicated by the city more than a half century ago. See Portsmouth City Reports (1887) page 12; Annual Report City of Portsmouth (1888) page 13; Gurney, Portsmouth Historic and Picturesque (1902) page 64. It cannot be argued that this is a recent discrimination against Jehovah's witnesses since the denial of the park for religious and sectarian meetings is consistent with a definite and systematic policy which treats the Jew, the Catholic, the Protestant and the Jehovah's witness alike.

If the city of Portsmouth wishes to use one of its small parks for other public purposes and to prohibit its use for religious and sectarian meetings in a nondiscriminatory way, constitutional rights are not abridged if there are still adequate places of assembly for those who wish to hold public open air church meetings. If the right to hold a church meeting on public property is to be given a preferred position, it does not necessarily follow that that right can be exercised in every park at any time that a certain group desires to do so. The privilege of people to seek peace and sanctuary in a public park, the privilege to be let alone and the privilege not to be subject to oral aggression of a religious nature on Sunday are

entitled to some consideration. If they are allowed to abridge or unreasonably impair the freedoms of free speech, assembly and worship they are unconstitutional. If such privileges are provided for in a systematic and nondiscriminatory way so that the freedoms of speech, assembly and worship can be adequately exercised within a city the Constitution is no bar to their enforcement.

In the present case we have an ordinance which the defendants have conceded to be valid on its face. The ordinance has been construed by this court and the Supreme Court of the United States in such a way that no discriminatory or unfair abridgement is reasonably possible. This is not a case like *Niemotko* where there was an amorphous, indefinite and nonstatutory policy. In *Niemotko* the applicants were questioned by the city council in a way which clearly indicated prejudice, bias and the consideration of immaterial matters. Those factors are not present in this case. In *Niemotko* the city had previously permitted gatherings by religious groups which is not the case here. In *Niemotko* it was evident there was a previous restraint under an indefinite licensing system which in effect regulated the use of public parks according to the nature of the applicant and the content of his speech. No such attempt is present in this case.

The persistent and perplexing problem of making a reasonable and nondiscriminatory accommodation when fundamental rights collide cannot be solved in a vacuum. The factual situation is therefore extremely important in every case.

The record before us presents an ordinance valid on its face and without any evidence of discrimination in the manner in which it is construed and applied. The defendants have assumed in their argument that the question before this court is whether religious meetings can be prohibited in public parks. The issue which this case presents is whether the city of Portsmouth can prohibit religious and church meetings in Goodwin Park on Sundays under a licensing system which treats all religious groups in the same manner. Whether a city could prohibit religious meetings in all of its parks is a doubtful question which we need not decide in this case. What we do decide is that a city may take one of its small parks and devote it to public and nonreligious purposes under a system which is administered fairly and without bias or discrimination.

No question is presented in this case as to the validity of the fee charged for the use of the park in certain cases. The fee, which is usually nominal and frequently nonexistent, in no event

can exceed the reasonable costs of policing the requested meeting.

The fact that some members of the city council thought the granting of a license for a church meeting in Goodwin Park would create a disturbance does not change the result. Although it was an erroneous and insufficient reason for denying the license (*Kunz* v. *New York,* 71 S. Ct. 312), it has long been the rule in this state that a wrong reason for a correct decision does not invalidate the decision. The main reason for denying the license was the municipal policy of restricting Goodwin Park to nonreligious public purposes and under the factual circumstances of this case was a proper one. See *Commonwealth* v. *Gilfedder,* 321 Mass. 335, 341.

Reliance is also placed on *Milwaukee* v. *Carter,* (Wis.) 45 N. W. (2d) 90, where an ordinance prohibiting religious services in public parks was held unconstitutional. That case is not in point since it purported "not to regulate but to prohibit speech in public parks on political as well as religious subjects." *Id.,* 93. At this juncture it is important to state that in sustaining the Portsmouth ordinance no reliance is placed on *Davis* v. *Massachusetts,* 167 U. S. 43, which is believed to have been so eroded by the force of time and recent decisions as to be valueless as a binding precedent.

Finally mention should be made of the judicial climate in which the Portsmouth ordinance is to be construed and applied. In their consistent effort to vindicate their civil rights, Jehovah's witnesses have been accorded protection here at times when and under circumstances in which these rights were not protected elsewhere. *State* v. *Lefebvre,* 91 N. H. 382; *Prince* v. *Massachusetts,* 321 U. S. 158; *State* v. *Richardson,* 92 N. H. 178. While they have not been allowed to push free speech to the point of abuse (*State* v. *Chaplinsky,* 91 N. H. 310; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568), limitless discretion, arbitrary action and discriminatory practice on the part of municipal officers have never been allowed against Jehovah's witnesses. There is nothing in the record in this case to raise an inference that Portsmouth is guilty of palpable evasion of the defendants' rights under any guise whatever. On the contrary the city has enforced with respect to one small park an honest, reasonable and nondiscriminatory licensing system which operates fairly on all.

*Case discharged.*

All concurred.