Charlie DEVINE, a/k/a Charlie Levine, James E. Harris, Ulysses Z. Nunnally, Theophilus Smith, Julius Robinson, Haver Willis, Will Henry Rogers, and Stanley R. Wise on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Phillip WOOD, as Sheriff of Autauga County, Alabama; U. G. Jones, as District Attorney for the 19th Judicial Circuit, and Edward W. Drinkard, as County Attorney for Autauga County, Defendants.

Civ. A. No. 2617-N.

United States District Court
M. D. Alabama, N. D.
June 21, 1968.

Solomon S. Seay, Jr., Gray, Seay, Langford & Pryor, Montgomery, Ala., Howard Moore, Jr., and Peter E. Rindskopf, Atlanta, Ga., for plaintiffs.

MacDonald Gallion, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., State of Alabama, Montgomery, Ala., for defendants.

Before GEWIN, Circuit Judge and JOHNSON and PITTMAN, District Judges.

## MEMORANDUM OPINION AND ORDER

PER CURIAM:

The plaintiffs, as Negro citizens residing in Alabama, with the exception of Stanley R. Wise who is a resident of Georgia, and as members of the class they represent, filed with the court on November 24, 1967, their complaint seeking a temporary restraining order, a preliminary and permanent injunction enjoining the defendants from prosecuting them for violation of Title 14 Section 407 of the Code of Alabama, and a declaratory judgment that Title 14 Section 407 of the Code of Alabama is unconstitutional on its face and as applied under the First and Fourteenth Amendments to the Constitution of the United States for vagueness and overbreadth. On November 27, 1967, the court denied the plaintiffs' request for a temporary restraining order which was sought without notice to the defendants and without the court's hearing any testimony in support of the request.

Plaintiffs invoke the jurisdiction of the court pursuant to Title 28 United States Code Sections 1343(3), (4), and 1331 and also pursuant to Title 42 United States Code Sections 1981, 1983, and 1985(3). A three-judge court was convened pursuant to Title 28 United States Code Section 2281 et seq., and the cause was submitted upon the pleadings and the testimony offered at the hearing held on March 18, 1968, along with briefs subsequently filed by the parties. By stipulation of the parties in open court, the findings of fact made by a member of this panel in Houser v. Hill, 278 F.Supp. 920 (M.D.Ala.1968) are incorporated into and made a part of the findings in this cause.

A summary of the pertinent facts is as follows:

The immediate origin of the arrests and charges relating to the violence in this cause probably was the shooting of a Negro prisoner by Prattville Police in February 1967. Unrest among the Negroes followed. On Sunday, June 11, 1967, a chain of events was commenced which culminated in the arrests involved in this cause. At approximately 3:00 p. m. the Autauga County Voters Association and the Autauga County Improvement Association convened a routine meeting in Prattville. Approximately 75 to 100 Negroes were present, and the principal speaker was Mr. Stokely Carmichael. This meeting was dispersed by the Prattville City Police. Part of this group reassembled in the Happy Hollow area and finally gathered in the home of Mr. Dan Houser in the same area.

The affair ended at approximately 2:00 a.m., the same night, when part of the group was arrested at Mr. Houser's home by Sheriff Wood.

The court in Houser v. Hill held "* * the fault lies on both sides (the plaintiffs in that suit and the Prattville City Police). * * * The evidence in this case does not reflect any conduct on the part of the defendant Philip Wood, Sheriff * * * designed to violate * * * any rights of the plaintiffs * * *."

The Association's meeting opened at approximately 3:00 p.m. with singing, preliminary announcements, and short talks. Mr. Carmichael started his speech "We advocate that all black people get some guns and learn to use them. The only way to get Kennedy Hill off the force is to organize the black power in this area and use your guns. Black power! Black power! Black power!" See Appendices "A" and "C", Houser v. Hill, for a description of the other events and verbal exchanges.

The affair was ended about 2:00 a.m., the same night, when charges and arrests were made which are the subject of the complaints of this action. Between 3:00 p.m., the beginning of this affair, and 2:00 a.m., the ending of this affair, there had been considerable gunfire in the city at various and sundry places, including the Happy Hollow area and that of Mr. Dan Houser's home. By the time the arrests were made the situation was extremely tense, the city was almost an armed camp and an explosive situation existed which could have easily erupted into a riot.

About 9:00 p.m. Sheriff Wood received a call from Prattville Police Officers for help. About 9:30 p.m. the Sheriff called for tracking dogs of the State. The dogs were taken to a spot where shots had reportedly been fired. An armed deputy and city policeman were directed to accompany the unarmed dog-handler for his protection. The dogs and men proceeded in a circular direction from the spot they had been taken. As the dogs and three men came into the vicinity of Mr. Dan Houser's home there was a shotgun blast. The dog-handler, deputy, and city policeman were struck by shotgun pellets. After a telephone call by the Sheriff to Mr. Houser at his home, and the use of a loud speaker, about 43 people came out of the home. The home was searched and a double-barrel shotgun was found hidden between the mattresses of a bed. There was also found in the home a spent shotgun shell of the same gauge as the shotgun. The shell and gun gave off an odor of powder—indicating recent firing. Warrants were sworn out charging 10 of the 43 people, including the plaintiffs, with violation of Alabama's Unlawful Assembly Act, Title 14, Section 407, Code of Alabama 1940 (Recomp. 1958).

The plaintiffs in this action are certain of the Negroes who were present during the disturbance and who were charged with violating the Unlawful Assembly statute. This is a civil action against the sheriff of Autauga County (Wood), the district attorney for the Autauga County Circuit Court (Jones), and the Autauga County attorney (Drinkard), and in addition to an injunction, plaintiffs seek a declaratory judgment that the Unlawful Assembly statute is unconstitutional on its face and as applied to these plaintiffs. The unconstitutionality is said to result from "vagueness and overbreadth."

The Alabama Unlawful Assembly statute, Title 14, Section 407 of the Alabama Code 1940 (Recomp. 1958) which states,

> "If two or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall, on conviction, be punished at the discretion of the jury, by fine and imprisonment in the county jail, or hard labor for the county, for not more than six months."

is attacked by the plaintiffs as an overly broad and vague regulation of expression in that it hinders their right to the lawful exercise of their right to free speech and peaceful assembly and is therefore void *on its face*.

They further allege the statute is so vague, indefinite, and uncertain *in its application* that they did not have fair notice that their conduct on the night of June 11, and the early morning hours of June 12, constituted a violation of the statute.

■ The Alabama Unlawful Assembly statute is here attacked as void for vagueness. Such an attack is good if the statute is "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322.

In Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949), the Supreme Court noted that the state court's interpretation of the ordinance in question "is a ruling on a question of state law that is as binding on us as though the precise words

had been written into the ordinance." The interpretation given this statute by the Alabama courts distinguishes it from those cases such as Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), and Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963), where the Supreme Court found the breach of the peace statutes objectionable. In Abernathy v. State, 42 Ala.App. 149, 155 So. 2d 586 (1962), reversed on other grounds, 380 U.S. 447, 85 S.Ct. 1101, 14 L.Ed.2d 151 (1965), the Alabama Court of Appeals defined an unlawful assembly as:

"* * * an assembly of three or more persons, (Our statute has reduced the minimum number of participants to two), who, with intent to carry out any common purpose, assemble in such a manner, or so conduct themselves when assembled, as to cause persons in the neighborhood of such assembly to fear on reasonable grounds that the persons so assembled would commit a breach of the peace or provoke others to do so." (Citations omitted.) "In general terms a breach of the peace is a violation of public order, a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace." (Citations omitted.)

The fact that the statute punishes an unlawful assembly of those who "meet together to commit a breach of the peace * * *" does not render it objectionable. In Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), while upholding trespass convictions of demonstrators who gathered on the driveway and grounds of a jailhouse to protest the earlier arrest and confinement of some fellow demonstrators, the Supreme Court noted that breach of the peace statutes in South Carolina (Edwards v. State of South Carolina, supra) and Louisiana (Cox v. State of Louisiana, supra) have been struck down as being so broad and all embracing as to jeopardize freedom of speech, press, assembly, and petition. *The court has not said that breach of the peace statutes are void per se, but void only when they purport to reach or are applied to peaceful conduct.* Mr. Justice Black, who wrote the opinion in *Adderley* stated earlier that he did not think the Court intended in Cox v. State of Louisiana to make a "sweeping condemnation of breach of the peace statutes," Brown v. State of Louisiana, 383 U.S. 131, 158, 86 S.Ct. 719, 732, 15 L.Ed.2d 637 (1966) (dissenting), and in both *Cox* and *Edwards* the crucial defect stressed by the Court was the use of breach of the peace statutes against peaceful conduct. See Note, Regulation of Demonstrations, 80 Harv.L.Rev. 1773 (1967).

The statute in question as construed by the Alabama courts precludes conviction of those participating in a peaceful assembly and is sufficiently definite to meet due process standards. We hold the statute under attack is not void for vagueness.

The statute is also attacked as void for overbreadth. Such an attack is good if it offends the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. * * *" Zwickler v. Koota, 389 U.S. 241, at 250, 88 S.Ct. 391, at 396, 19 L.Ed.2d 444 (1967).

It is well settled that "only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." NAACP v. Button, 371 U.S. 415, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963). The State of Alabama has an obvious interest in the preservation and protection of peace and good order within her borders, just as that same interest existed when the crime of unlawful assembly was known to the common law. In Feiner v. People of the State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951), the Supreme Court stated, "This

Court respects, as it must, the interest of the community in maintaining peace and order on its streets." The Court has noted that, "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious." Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

The First Amendment right involved here is "the right of the people *peacefully* to assemble * * *" The statute here proscribes only those assemblies which are for the purpose of committing a breach of the peace or doing an unlawful act. This limitation on unlawful assembly is within the state's constitutional power. While ordinary murmurings and objections of a hostile audience cannot be allowed to break up an otherwise lawful, peaceful, public meeting, however, where as in this case, there is violence such as the shootings, the police are not in the name of freedom of assembly powerless to prevent a breach of the peace. Cf. McLaurin v. Burnley, 279 F.Supp. 220 (N.D.Miss.1967). In Edwards v. State of South Carolina and Cox v. State of Louisiana, the court noted that the factual situation in those cases was a "far cry" from the situation presented in *Feiner*. In *Edwards* and *Cox*, there was no violence or threat of violence on the part of any member of the crowd there involved. Judge Clayton noted in McLaurin v. Burnley, supra, "More, much more, than the simple arrest of a 'civil rights worker' is involved here. At stake, is the right of a community to preserve the peace and to protect itself from riots and disorder."

Clearly this is a law dealing with conduct subject to regulation so as to vindicate important interests of society and the statute's prohibition of unlawful assembly of persons to commit a breach of the peace does not abridge constitutional liberty.

From the evidence in this case it is clear that there was no harassment, intimidation, or oppression of these plaintiffs, for they were arrested for their violation of the state statute prohibiting such unlawful assemblies. As Judge Johnson pointed out in Houser v. Hill, "The use of firearms as a means of social protest is *not* a constitutionally protected form of expression." citing Brown v. Clark, 274 F.Supp. 95 (E.D. La.1967). The state did not apply the statute in question to discourage protected activities. Thus, this constitutional statute was constitutionally applied by the Sheriff of Autauga County.

Plaintiffs have failed to show any justification for injunctive relief. As the Supreme Court reiterated in Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (U.S. April 22, 1968), "Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction." citing Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). The "special circumstances" of *Dombrowski* are not found here, for there was no harassment, intimidation or oppression of the plaintiffs in an effort to exercise constitutional rights. Nor have the plaintiffs shown any chilling effect on their right of peaceful assembly by virtue of the arrests during the early morning of June 12, 1967. As noted in Wright v. City of Montgomery, 282 F.Supp. 291 (M.D. Ala.1968) "* * * since plaintiffs were engaged in the type of unlawful conduct that good-faith enforcement of penal ordinances and statutes is designed to 'chill,' they cannot now complain as to the 'chilling effect' of such ordinances and statutes and the enforcement thereof. Deterrence of that which society has a right to prevent has always been, and I trust always will be,

recognized as a legitimate function of city, state and federal penal statutes."

It is therefore ordered, adjudged, and decreed that the relief sought by the plaintiffs be and the same is hereby denied. Costs are taxed against the plaintiffs for which execution may issue.