Portsmouth District Court
No. 6542

STATE OF NEW HAMPSHIRE v. ELIZABETH ALBERS & a.

March 29, 1973

*Warren B. Rudman,* attorney general, and *David W. Hess,* assistant attorney general *(Mr. Hess* orally), for the State.

*William S. Orcutt,* chief counsel for New Hampshire Civil Liberties Union *(Mr. Orcutt* orally), for the defendants.

KENISON, C. J. The question presented for decision in this case is whether RSA 609-A:1 II (Supp. 1972) is void on its face for vagueness and overbreadth. This question is raised by the named defendant and fourteen others who were arrested on May 15, 1972, at or near the entrance to Pease Air Force Base, while engaging in a protest demonstration against the Vietnam War and, allegedly, while standing in a public highway blocking traffic.

The defendants were charged under RSA 609-A:4 (Supp. 1972) with failing to withdraw from a mob action, as defined in RSA 609-A:1 (Supp. 1972), after being commanded to do so by a police officer. Before entering pleas in district court, each of the defendants moved to dismiss the complaints on two grounds: (1) That the complaints were defective in that they did not apprise the defendants of the specific offense under RSA 609-A:1 (Supp. 1972) with which they were being charged; and (2) That subsection II of RSA 609-A:1 (Supp. 1972), the particular section of the statute defining mob action as "the assembly of two or more persons to do an unlawful act" and under which the State in fact was charging the defendants, is unconstitutionally vague and overbroad. These two questions were reserved by the Portsmouth District Court (*Flynn,* J.) and transferred without ruling to this court. Counsel for the defendants at oral argument waived the first claim, stating that defendants would rely entirely upon the claim of vagueness and overbreadth.

A statute or ordinance is void for vagueness when it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127 (1926); *Zwickler v. Koota,* 389 U.S. 241, 249, 19 L. Ed. 2d 444, 451, 88 S. Ct. 391, 396 (1967); *State v. Parker,* 109 N.H. 491, 256 A.2d 159 (1969). If the criminal enactment "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," it is impermissibly vague and indefinite. *United States v. Harriss,* 347 U.S. 612, 617, 98 L. Ed. 989, 996, 74 S. Ct. 808, 812 (1954); *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843 (1972). The vagueness doctrine

rests upon the two-pronged premise of procedural due process that criminal laws must in the first instance give reasonably clear notice or warning to the potential offender of the specific conduct proscribed *(State v. Parker supra)* and must ultimately give "ascertainable standards of guilt" to the judge and jury charged with making an objective determination of guilt. *Chronicle & c. Pub. Co. v. Attorney-General,* 94 N.H. 148, 48 A.2d 478 (1946); *Cline v. Frink Dairy Co.,* 274 U.S. 445, 465, 71 L. Ed. 1146, 1156, 47 S. Ct. 681, 687 (1927); *Winters v. New York,* 333 U.S. 507, 515, 92 L. Ed. 840, 849, 68 S. Ct. 665, 670 (1948); *Grayned v. Rockford,* 408 U.S. 104, 108-09, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2299 (1972); *Colten v. Kentucky,* 407 U.S. 104, 110, 32 L. Ed. 2d 584, 589, 92 S. Ct. 1953, 1957 (1972). *See generally* Collings, *Unconstitutional Uncertainty —An Appraisal,* 40 Cornell L. Rev. 195, 196-97 (1955); Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 68-69 (1960).

A statute or ordinance is void for overbreadth when it offends the substantive due process notion that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." *N.A.A.C.P. v. Alabama,* 377 U.S. 288, 307, 12 L. Ed. 2d 325, 338, 84 S. Ct. 1302, 1314 (1964); *Zwickler v. Koota,* 389 U.S. 241, 250, 19 L. Ed. 2d 444, 451, 88 S. Ct. 391, 396 (1967). The "crucial question" in each case is whether the statute or ordinance "sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments." *Grayned v. Rockford,* 408 U.S. 104, 114-15, 33 L. Ed. 2d 222, 231, 92 S. Ct. 2294, 2302 (1972). *See generally* Note, *The First Amendment Overbreadth Doctrine,* 83 Harv. L. Rev. 844 (1970). Laws which by their broad or vague language leave to the police unfettered discretion in enforcement are invalid, particularly when their potential for use in the suppression of first amendment rights is great. *See, e.g., Papachristou v. Jacksonville,* 405 U.S. 156, 168, 31 L. Ed. 2d 110, 119, 92 S. Ct. 839, 846 (1972); *Edwards v. South Carolina,* 372 U.S. 229, 237, 9 L. Ed. 2d 697, 703, 83 S. Ct. 680, 684 (1963). "Such a statute does not provide for government by clearly defined laws, but rather for govern-

ment by the moment-to-moment opinions of a policeman on his beat." *Cox v. Louisiana,* 379 U.S. 536, 579, 13 L. Ed. 2d 471, 501, 85 S. Ct. 466, 469 (1965) (Black, J., concurring); *accord, Shuttlesworth v. Birmingham,* 382 U.S. 87, 90, 15 L. Ed. 2d 176, 179, 86 S. Ct. 211, 213 (1965). It is against this backdrop of constitutional vagueness and overbreadth law that the facial validity of RSA 609-A:1 II (Supp. 1972) must be tested.

The essence of the defendants' claim is that the unlawful assembly proscription here in issue, rendering unlawful "the assembly of two or more persons to do an unlawful act," is too susceptible for use by the police as a ready vehicle for the suppression of the expression of unpopular views by demonstrators and other "assemblies". *See, e.g., Edwards v. South Carolina supra.* Relying largely upon *Landry v. Daley,* 280 F. Supp. 938, 955 (N.D. Ill. 1968) (three-judge court), *rev'd on other grounds sub nom. Boyle v. Landry,* 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758 (1971), which invalidated Illinois' identical unlawful assembly provision, the defendants specifically contend that the phrase "unlawful act" can too easily be read to include unlawful civil acts such as torts, zoning ordinance violations, and contract breaches. It is urged that the inclusion within the prohibition of any and all civil and criminal infractions no matter how innocuous renders the statute void for vagueness and overbreadth.

We do not consider the *Landry* case apposite to our situation. In that case a federal court placed its own construction on the phrase "unlawful act" in the absence of an interpretation by the Illinois courts. Our task as a State court is to determine the meaning of the phrase as intended by our legislature. *E.g., Frizzell v. Charlestown,* 107 N.H. 286, 220 A.2d 742 (1966); *Chagnon v. Union Leader Co.,* 104 N.H. 472, 190 A.2d 721 (1963). From discussions on this statute in both the house and the senate, it is clear that RSA 609-A:1 II (Supp. 1972) was intended to discourage and punish participants in the type of violent and destructive riots which had occurred at Hampton Beach shortly before the bill was introduced. *See* N.H.S. Jour. 854-58 (1965); N.H.H.R. Jour. 1041-42 (1965). There was certainly no intention to hinder peaceable assemblies, nor any indication in the debates that

unlawful civil acts were contemplated in the phrase "unlawful acts". *See id.* We therefore conclude that only assemblies for the purpose of committing unlawful *criminal* acts were intended to be proscribed by RSA 609-A:1 II (Supp. 1972), and we so construe the statute. *Rollins v. Shannon,* 292 F. Supp. 580, 590 (E.D. Mo. 1968) (three-judge court), *vacated on other grounds,* 401 U.S. 988, 28 L. Ed. 2d 527, 91 S. Ct. 1235 (1971); *see Mixon v. State,* 226 Ga. 869, 178 S.E.2d 189 (1970). This interpretation of the words "unlawful act" in RSA 609-A:1 II (Supp. 1972) cures any vagueness which may have inhered in these words since the conduct prohibited is clear, to wit, assemblies to do criminal acts.

Nor are the words "to do" vague or uncertain. A basic weakness in the *Landry v. Daley* rationale is the premise that "the language apparently would make the act of assembling to contemplate or consider 'unlawful' conduct a crime . . . ." 280 F. Supp. 938, 955. This of course a State cannot do. *E.g., Brandenburg v. Ohio,* 395 U.S. 444, 23 L. Ed. 2d 430, 89 S. Ct. 1827 (1969). But even the words of the statute, assemblies "to do" unlawful acts, belie such a construction, as does the legislative history. The purpose of this section of the mob action statute was to proscribe the assembly of persons for the specific purpose of engaging in "imminent lawless action". *Id.; see* N.H.H.R. Jour. 1041 (1965). The underlying purpose of section II was to give the police a tool to "nip" riots "in the bud". N.H.S. Jour. 855 (1965); *see State v. Woolman,* 84 Utah 23, 39, 33 P.2d 640, 647 (1934); *Rollins v. Shannon supra.* There is no "bud" to a riot or other crime until the assembled group stops talking about the advisability of committing the crime and begins preparing for it. When a riot is imminent, the very act of assembling by a group of persons intent on riotous behavior is the act of preparation sought to be prevented. In a peaceful protest situation, the initial act of assembling at a lawful place and time will ordinarily not fall within the statutory proscription, for the threatened criminal action must be real, immediate and probable. *See Owens v. Commonwealth,* 211 Va. 633, 179 S.E.2d 477 (1971). *See generally* Note, *Regulation of Demonstrations,* 80 Harv. L. Rev. 1773 (1967); Annot., *What Constitutes Offense of Unlawful Assembly,* 71 A.L.R.2d 875 (1960). The

State's analysis is correct that the statute permits prosecution only when a crowd intentionally embarks on concerted criminal action. Peaceable assemblies are thus not proscribed, even though there may be some minor, incidental breaches of the law by some of the participants or spectators. *See Cox v. Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 466 (1965); *Edwards v. South Carolina,* 372 U.S. 229, 9 L. Ed. 2d 697, 83 S. Ct. 680 (1963).

Any analysis of the overbreadth claim involves the premise that the State has an indisputable and substantial interest in protecting its citizens against riots and other forms of unlawful mob action, precisely the evil against which RSA 609-A:1 II (Supp. 1972) was directed. *See Rollins v. Shannon,* 292 F. Supp. 580, 590-91 (E.D. Mo. 1968) (three-judge court), *vacated on other grounds,* 401 U.S. 988, 28 L. Ed. 2d 527, 91 S. Ct. 1235 (1971); *Devine v. Wood,* 286 F. Supp. 102, 106 (M.D. Ala. 1968) (three-judge court); *State v. Dixon,* 78 Wash. 2d 796, 806, 479 P.2d 931, 937 (1971). Peaceable protests and demonstrations, on the other hand, are an entirely different form of group conduct, one which has as its goal the concerted communication of a point of view. This being true, the conduct is protected by the first and fourteenth amendments and N.H. CONST. pt. 1, arts. 22 & 32 which guarantee the freedom of assembly and expression. *E.g., Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 222, 92 S. Ct. 2294 (1972). And while a State may not abridge or deny this freedom of expression under the guise of regulation *(id.; Hague v. C.I.O.,* 307 U.S. 496, 516, 83 L. Ed. 1423, 1437, 59 S. Ct. 954, 964 (1939)), the legislature may adopt reasonable and nondiscriminatory regulations concerning the time, location, and manner of peaceful demonstrations in order to protect a substantial state interest. *E.g., Grayned v. Rockford,* 408 U.S. at 115, 33 L. Ed. 2d at 231, 92 S. Ct. at 2303; *Wright v. Montgomery,* 406 F.2d 867, 873 (5th Cir. 1969); Wright, *The Constitution on the Campus,* 22 Vand. L. Rev. 1027, 1042-43 (1969).

"However laudatory, protests have often created problems for officials and have prompted the development of certain state interests that may be invoked to regulate them. These interests are the prevention of riots, disorder, interference

with traffic, blockage of sidewalks or entrances to buildings, and disruption of the normal functions of the public facility." *Davis v. Francois,* 395 F.2d 730, 733 (5th Cir. 1968); *accord, Wright v. Montgomery supra. See generally* Emerson, The System of Freedom of Expression 285-388 (1970); Note, *Regulation of Demonstrations,* 80 Harv. L. Rev. 1773 (1967).

It is particularly pertinent to this case that well within the domain of legitimate legislation are laws which insure the preservation of the streets for their primary, intended use for travel, even though one mode of "expression" — the obstruction of traffic by a group of demonstrators — may be prevented as a result. "The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. The control of travel on the streets is a clear example of governmental responsibility to insure this necessary order. A restriction in that relation, designed to promote the public convenience in the interest of all, and not susceptible to abuses of discriminatory application, cannot be disregarded by the attempted exercise of some civil right which, in other circumstances, would be entitled to protection." *Cox v. Louisiana,* 379 U.S. 536, 554, 13 L. Ed. 2d 471, 484, 85 S. Ct. 453, 464 (1965); *accord, Cox v. New Hampshire,* 312 U.S. 569, 85 L. Ed. 1049, 61 S. Ct. 762 (1941), *aff'g State v. Cox,* 91 N.H. 137, 16 A.2d 508 (1940); *see State v. Hudson,* 111 N.H. 25, 274 A.2d 878 (1971). "[A] person could not exercise this [first amendment] liberty by taking his stand in the middle of a crowded street, contrary to traffic regulations, and maintain his position to the stoppage of all traffic . . . ." *Schneider v. State,* 308 U.S. 147, 160, 84 L. Ed. 155, 164, 60 S. Ct. 146, 150 (1939); *Poulos v. New Hampshire,* 345 U.S. 395, 406 n.11, 97 L. Ed. 1105, 1114 n.11, 73 S. Ct. 760, 767 n.11 (1953), *aff'g State v. Poulos,* 97 N.H. 352, 88 A.2d 860 (1952). This is, in fact, what the defendants were allegedly doing in this case prior to refusing to disperse.

We have construed RSA 609-A:1 II (Supp. 1973) to pro-

hibit only gatherings assembled for the specific purpose of imminently committing a crime in concert. As thus interpreted, the statute "aims merely to punish the abuse of right . . . and subjects the speaker to no restraint of indispensable right . . . . It aims at abuses. It evidences some care in balancing community order with the right of free discussion of matters of public concern." *State v. Chaplinsky,* 91 N.H. 310, 318, 18 A.2d 754, 761 (1941), *aff'd sub nom. Chaplinsky v. New Hampshire,* 315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942). The statute does not, as construed, sweep within its ambit an appreciable amount of constitutionally protected conduct. Since RSA 609-A:1 II (Supp. 1972) rests firmly upon the valid and substantial state interest in protecting against riots and other unlawful, concerted activity, and since at most it restricts lawful protest demonstrations and other assemblies only incidentally and peripherally, the statute is not overbroad. *Devine v. Wood,* 286 F. Supp. 102 (M.D. Ala. 1968) (three-judge court); *State v. Dixon,* 78 Wash. 2d 796, 479 P.2d 931 (1971); *In re Bacon,* 240 Cal. App. 2d 34, 49 Cal. Rptr. 322 (1966).

There are two equally critical halves to the rubric "ordered liberty"; the maintenance of order and a respect for the freedoms of others are essential to a society dedicated to preserving freedom for all. *See* N.H. CONST. pt. I, art. 3; *State v. Derrickson,* 97 N.H. 91, 81 A.2d 312 (1951); Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 115 (1960). We have concluded that the statutory prohibition against unlawful assemblies attacked in this case, guarding against assemblages bent on concerted criminal conduct, does not tip the scales too heavily in favor of order at the expense of liberty. "[O]ur constitutional command of free speech and assembly is basic and fundamental and encompasses peaceful social protest, so important to the preservation of the freedoms treasured in a democratic society . . .. [But] [t]here is a proper time and place for even the most peaceful protest and a plain duty and responsibility on the part of all citizens to obey all valid laws and regulations." *Cox v. Louisiana,* 379 U.S. 559, 574, 13 L. Ed. 2d 487, 498, 85 S. Ct. 476, 486 (1965).

Of course the application of this as any statute must be

fair, uniform and nondiscriminatory. *E.g., State v. Derrickson,* 97 N.H. 91, 93, 81 A.2d 312, 313 (1951); *Poulos v. New Hampshire supra; see* Note, *The Void-for-Vagueness Doctrine in the Supreme Court,* 109 U. Pa. L. Rev. 67, 82 n.78 (1960). The law must be enforced in the same manner and to the same degree whether the demonstrators are protesting the war in Vietnam, an unfavorable labor condition, or the equal rights amendment. But there are no facts or allegations before us indicating that any law has been discriminatorily applied to these defendants. As usual, we shall deal with unconstitutional applications of the law as they arise and on the facts of each case. *See, e.g., Grayned v. Rockford,* 408 U.S. at 106 n.1, 121 n.50, 33 L. Ed. 2d at 226 n.1, 235 n.50, 92 S. Ct. at 2297 n.1, 2306-07 n.50 (1972).

In this case, only the facial validity of the statute has been questioned. We rule that RSA 609-A:1 II (Supp. 1972) is neither vague nor overbroad but is constitutional on its face.

*Remanded.*

All concurred.