Rockingham
No. 80-058

THE STATE OF NEW HAMPSHIRE

v.

DAVID NICKERSON & a.

December 17, 1980

*Gregory H. Smith*, acting attorney general (*Martha V. Gordon*, assistant attorney general, orally), for the State.

*James E. Duggan*, of Concord, by brief and orally, for the defendants.

BROCK, J. This is a criminal case involving a total of nine defendants who were charged with disorderly conduct (RSA 644:2 I) because of their participation in a protest demonstration directly outside the gates of the Seabrook Nuclear Power Station on August 25, 1978. After a consolidated jury trial in the Superior Court (*Randall*, J.), each of the nine defendants was found guilty. The defendants then filed a notice of appeal with this court asserting that their arrests and convictions were in violation of the rights guaranteed to them under the first and fourteenth amendments of the United States Constitution and part 1, articles 22 and 32 of our own State Constitution. Specifically, the issue on this appeal is whether RSA 644:2 I is void for vagueness or overbreadth. Because we conlude that the language of the statute sweeps unnecessarily broadly into the constitutionally protected area of free speech, we hold that the portion of the statute at issue in this case is unconstitutional and reverse the defendants' convictions.

On August 25, 1978, the defendants, with a number of other people, assembled on a public place, a traffic island located directly outside the main entrance to the Seabrook Power Station. The exact number of people in the group is not known, but one police witness testified that it could have been thirty.

The traffic island is triangular in shape with one side bordering Route 1 and the other two sides bordering entrance and exit roads to the nuclear power plant. Some members of the group erected a crude information booth and posted signs advocating the use of hydroelectric, wind and solar power as alternative energy sources to nuclear power. Other members of the group distributed leaflets, held signs, or simply stood around. In general, all of this activity was aimed at protesting the construction of the nuclear power plant.

During this "occupation" of the traffic island, the protestors were observed by twenty-six members of the State Police. Twenty minutes after the "occupation" began, the officer in charge of the State Police ordered all of the protestors to leave the traffic island and advised them that should they fail to do so, they would be arrested for disorderly conduct. This order was repeated five minutes later but many people remained on the island. At this point, the nine defendants, along with several others, were arrested.

At trial the officer in charge of the arrests explained the reason for the arrests as follows:

> "[T]hey were creating a hazard to the traffic there because [of] their presence, not only by being on and off the island there, but the fact that people driving cars down there, it was just human nature for them to be looking over to the right or left, and I was afraid there was going to be an accident there, someone was going to run into one [of] them there."

No evidence was offered, however, to indicate which, if any, of the individual defendants actually stepped onto the highway.

■ ■ The State concedes that the sole statutory basis for the defendants' arrests and convictions is the following pertinent portion of RSA 644:2 I:

> "A person is guilty of disorderly conduct if
>
> I. [H]e refuses to comply with a *lawful order* of the police to move from a public place . . . ."

(Emphasis added.) The definition of "lawful order" is not provided in the statute. Reference to comments made by the commission for the revision of criminal laws relating to the disorderly conduct statute does, however, provide some insight. Those comments were provided to the General Court when the statute was being

considered by the legislature and states that the statute "is designed to deal with such situations as where an individual is disturbing a public gathering and refuses to remove himself after having been ordered to do so by the police." RSA 644:2 *Comments to 1969 Report.* It is evident, however, that both the commission's comment to the statute and the language of the statute itself are set in general terms and can conceivably apply to a broad spectrum of "such situations." The situation to which the statute was applied in the case before us involved a group of people who were engaged in an apparently peaceful and orderly public expression of their views on nuclear power. This issue has been the subject of substantial public attention in this State and elsewhere for several years. It is therefore obvious that this case involves the issue of freedom of speech. When a statute "threaten[s] a fundamental right such as freedom of speech . . . special judicial scrutiny [is required]." *State v. Piper,* 117 N.H. 64, 65, 369 A.2d 199, 200 (1977). Moreover, "[l]aws which by their broad or vague language leave to the police unfettered discretion in enforcement are invalid, particularly when their potential for use in the suppression of first amendment rights is great." *State v. Albers,* 113 N.H. 132, 134, 303 A.2d 197, 199 (1973).

In this State "[t]he people have a right, in an orderly and peaceable manner, to assemble and consult upon the common good, give instructions to their representatives, and to request of the legislative body, by way of petition or remonstrance, redress of the wrongs done them, and of the grievances they suffer." N.H. CONST. pt. 1, art. 32. Likewise, the first amendment to the United States Constitution also protects the right to freedom of speech. It is not surprising that both the State and Federal Constitutions address themselves to the right of the people to peacefully assemble and raise public attention to matters they consider of importance because "[m]aintenance of the opportunity for free political discussion is a basic tenet of our constitutional democracy." *Cox v. Louisiana,* 379 U.S. 536, 552 (1965).

With these factors in mind we proceed to inquire whether RSA 644:2 I is so broad as to invade the constitutionally protected area of speech.

■ It is undisputed that the police ordered the defendants to leave the traffic island because of a perceived traffic hazard. This perceived hazard was the basis for the alleged "lawful order" to move from a public place. No one can seriously dispute the fact that such concerns should be paramount in the minds of the State Police. *See generally State v. Albers,* 113 N.H. 132, 138, 303 A.2d

197, 201–02 (1973). By the same token, however, the police should be equally concerned with the maintenance of constitutionally safeguarded liberties. Complicating their duties even further is the fact that the guarantee of the first amendment does not mean "that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *Greer v. Spock*, 424 U.S. 828, 836 (1976), *quoting Adderly v. Florida*, 385 U.S. 39, 48 (1966). The competing concerns of maintaining safe travel conditions for traffic on public streets and the protection of first amendment liberties has often been an issue resolved by the calm deliberations of the courts on the basis of individual fact situations. *See Cox v. Louisiana*, 379 U.S. 536, 553–58 (1965), and cases cited therein; *State v. Albers supra.* Calm and lengthy deliberations, however, are not often a viable procedure for the policeman on the street who is faced with a perceived safety hazard. His immediate concern is the swift and safe resolution of the hazard according to the statutory powers available to him. For that reason, when constitutional rights of the people are involved, a broadly drawn and vague statute provides as little guidance to the police officer as it does to the public.

In the case before us, there are only two factors which it is alleged caused a traffic safety hazard: some unidentified members of the group were stepping out into the roadway and passing motorists were being distracted by the activities. These concerns caused the police to issue the order to disperse. Apparently, no individual defendant was arrested for obstructing traffic, RSA 644:2 II(e), or for violating the latter part of RSA 644:2 I; "knowingly creat[ing] a hazardous or physically offensive condition by any act which serves no legitimate purpose."

Rather, the police, understandably concerned about alleviating a potentially hazardous situation, employed the wide discretion given them under RSA 644:2 I and ordered the group to leave. The statute does not premise the giving of a lawful order upon any particular conduct. Moreover, the order apparently need not be based on any type of conduct at all; mere presence in a public place seems sufficient under the broad terms of the statute. Our concern therefore becomes whether a narrower order and/or statute could have afforded the defendants a continued opportunity to present their views and at the same time insured the safety of both the passing motorists and the demonstrators themselves. In other words, the question is whether the statute's language leaves the police with "unfettered discretion." *State v. Albers*, 113 N.H. 132, 134, 303 A.2d 197, 199 (1973).

■■ Clearly, police concern over individuals stepping out into the street could have been dealt with by simply ordering members of the group not to step out into the street. Because of the obvious danger to the demonstrators themselves, and the hazard to motorists, the State does have the authority to regulate such conduct. *See, e.g., Cox v. Louisiana,* 379 U.S. 536 (1965); *State v. Albers supra.* Acting under the literal terms of the statute, however, the police sought to alleviate a potential traffic hazard by ordering the demonstrators to disperse. Rights afforded to the people under the State and Federal Constitutions may not be so summarily circumscribed. *See Cox v. Louisiana, supra* at 551–52. When peaceful, orderly public comment is involved, the police have a duty to take reasonable affirmative steps to insure the *maintenance* of the protestors' rights to freedom of speech and expression. *See Edwards v. South Carolina,* 372 U.S. 229, 231–38 (1963). Directing traffic is one such affirmative step. We therefore share the United States Supreme Court's view that a statute which "makes it a criminal offense for any person 'to refuse or fail to comply with any lawful order . . . of a police officer' . . . [is] so broad as to evoke constitutional doubts of the utmost gravity." *Shuttlesworth v. Birmingham,* 382 U.S. 87, 93 (1965). Moreover, "one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." *Wright v. Georgia,* 373 U.S. 284, 291–92 (1963). We therefore hold that the language: "[H]e refuses to comply with a lawful order of the police to move from a public place . . ." contained in RSA 644:2 I is unconstitutional under the first amendment to the United States Constitution and part 1, articles 22 and 32, of our State Constitution.

■ The criminal statutes of this State must take into account the fact that the people must be afforded an opportunity to engage in the peaceful public expression of their views. It is equally true that the State has the duty to see to it that when a group of people in this State choose to exercise such rights the opportunity to do so is maintained. *See Edwards v. South Carolina,* 372 U.S. at 238. Such a group, engaged in the peaceful and otherwise lawful exercise of their constitutional right, has as much right to police protection as other people and institutions in the community. *See Cox v. Louisiana,* 379 U.S. at 551, *citing Edwards v. South Carolina,* 372 U.S. at 237 and *Watson v. Memphis,* 373 U.S. 526, 535 (1963).

The State has the authority to pass statutes that vest a limited amount of discretion in police officers to insure and protect travel

on the streets. *Cox v. Louisiana*, 379 U.S. at 554; *see State v. Albers*, 113 N.H. 132, 303 A.2d 197 (1973). In this case, however, there was no evidence to suggest that the State Police, had they chosen to do so, could not have insured the safe flow of traffic without having to resort to arrests and criminal charges. Nothing herein is to be construed as excusing any person from obeying any lawful orders of the police under RSA ch. 262-A.

*Reversed.*

All concurred.