Request of the House of Representatives
No. 86-099

## OPINION OF THE JUSTICES

May 8, 1986

The following request of the House of Representatives for an opinion of the justices was adopted on March 5, 1986, and filed with the Supreme Court on March 6, 1986:

"Whereas, there is pending in the house, HB number 148 'An Act prohibiting the harrassment of hunters, trappers and fishermen'; and whereas, doubt has been expressed as to the constitutionality of the provisions of said bill; now, therefor, be it

"Resolved, by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following important questions of law:

"1. May the general court within the provisions of the New Hampshire Constitution enact a statute as proposed in HB 148, which would enable the state to use its police powers to protect licensed hunters, trappers and fishermen from any harrassment while engaged in pursuit of a lawful activity?

"2. Would any provision of the Constitution of the United States, with particular reference to Article I or the amendments to the Constitution relative to the freedom of religion, of speech and of the press, be violated by the provision of the bill that prohibits any person from physically or verbally provoking a licensed hunter, trapper or fisherman while engaged in pursuit of a lawful activity?

"That the clerk of the house be instructed to transmit to the clerk of the supreme court 6 copies of this resolution and 6 copies of HB 148."

The following answers were returned:

*To The Honorable House of Representatives:*

The undersigned justices of the Supreme Court make the following reply to your request for an opinion as to the constitutionality of House bill 148. Interested parties were invited to file memoranda with the court until March 20, 1986.

House bill 148 would amend RSA chapter 207 by adding a subdivision entitled "Harassment Prohibited," containing five new sections. The first section defines what is meant by "process of taking" and "wild animal" as used in the bill's succeeding sections. The second section would prohibit "interfer[ing]" with the taking or process of taking wild animals with intent to prevent the taking. It would also forbid "disturb[ing]" wild animals in order to "prevent or hinder" the taking. In addition, it would be illegal physically or verbally to provoke "another person who is engaged in the lawful taking of a wild animal on land or water in this state, or who has engaged in the process of taking, with the intent to dissuade or otherwise with provocative action prevent the taking, or to prevent by verbal harassment or physical action such person's enjoyment of the outdoors when that person is lawfully engaged in any hunting, fishing or trapping activities in this state," as would entering or staying on public land or trespassing on private land "with intent to violate this section." The third section would prohibit the failure to obey certain officials who order desistance from the forbidden conduct where they observe such conduct or have "reasonable grounds to believe" that such conduct has occurred or will occur on a given day on specific premises. The fourth section provides for injunctive relief and damages, including damages for economic loss and punitive damages. Under the fifth section, violating any prohibition in the statute would be a violation.

We interpret the first submitted question as being intended to encompass an inquiry into whether the proposed legislation would be consistent with each provision of the New Hampshire Constitu-

tion, and not merely whether it would be permitted under the police power, N.H. CONST. pt. II, art. 5, taken in isolation.

 The answer to the first question is no. House bill 148, while ostensibly involving only the exercise of the police power, necessarily implicates the State Constitution's free speech guarantee, N.H. CONST. pt. I, art. 22 (Supp. 1985), and would constitute a violation thereof. We recognize generally that "[t]he police power of the state extends to the protection of the lives, health, comfort, and quiet of all persons, and the protection of all property, within the state; and persons and property are subjected to such restraints and burdens as are reasonably necessary to secure the general comfort, health, and prosperity[,]" *State v. White*, 64 N.H. 48, 50, 5 A. 828, 830 (1886); *see Carter v. Craig*, 77 N.H. 200, 205, 90 A. 598, 600 (1914) (the general court's power to make "reasonable and wholesome laws" gives it the power to impose "reasonable and wholesome restrictions" on the rights of individuals); N.H. CONST. pt. II, art. 5.

 We likewise note that the right of individuals to hunt, trap, and fish in a lawful manner is clearly a proper subject of police power protection. *See State v. Company*, 49 N.H. 240, 250 (1870) (obstruction of the public right of fishing is a public nuisance, punishable at common law by indictments).

 Nevertheless, the State's exercise of its police power may not unreasonably interfere with an individual's right to free speech. Part I, article 22 (Supp. 1985) of the New Hampshire Constitution provides that, "[f]ree speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." As we noted in *State v. Derrickson*, 97 N.H. 91, 93, 81 A.2d 312, 313 (1951), the right to free speech guaranteed by the New Hampshire Constitution may not be prohibited, though it may be subjected to "reasonable and nondiscriminatory regulation." The regulation of free speech contained in House bill 148 is constitutionally objectionable because its language sweeps too broadly. It would prohibit not only speech likely to interfere with lawful activity or to provoke breaches of the peace, *see Brandenburg v. Ohio*, 395 U.S. 444 (1969) (State statute failing to draw a distinction between abstract advocacy of violence and advocacy directed to inciting or producing imminent lawless action violates first and fourteenth amendments); *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) (State law which, as construed by highest State court, prohibited addressing words to another which would tend to cause violent responses is not unconstitutional), but also mere expressions of a particular point of view raising no such risks. *See Opinion of the Justices*, 121 N.H. 542, 546, 431 A.2d 152, 155 (1981).

 The right of free speech as guaranteed by our State Constitution may be subject to "reasonable time, place, or manner regulations that serve a significant governmental interest and leave ample alternative channels for communication." *Consolidated Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 535 (1980); *see Cox v. New Hampshire*, 312 U.S. 569 (1941). However, such time, place, or manner controls may only be as broad as is required to further a significant government interest, and they may not be related to the content and subject matter of the message being communicated. *See Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972). "[A]bove all else," part I, article 22 (Supp. 1985) of the State Constitution, like the first amendment to the Federal Constitution, "means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Id.* at 95.

 The bill at issue here is not a valid time, place, or manner regulation because it discriminates among points of view. *See id.* at 95–96. For example, the second section of the proposed statute would prohibit anti-hunting advocates from verbally "provok[ing]" hunters with intent to dissuade them from taking animals. However, the bill could be read broadly enough to prohibit conservationists from addressing pro-conservation statements to those same hunters on public lands. Such comprehensive content-based restrictions are not permissible under the State Constitution.

 In addition, the bill is so vague as to provide little or no notice to an individual of ordinary intelligence as to what activity would come within its proscriptions. *See Opinion of the Justices*, 121 N.H. at 545, 431 A.2d at 154. Further, the language in the bill is overbroad in that critical terms in the bill are left undefined and could therefore be used to sweep whole categories of protected speech into its ambit. *See State v. Nickerson*, 120 N.H. 821, 824, 424 A.2d 190, 192 (1980); *State v. Albers*, 113 N.H. 132, 134, 303 A.2d 197, 199 (1973). The potential chilling effect on free speech would be substantial.

 Moreover, the statute potentially violates a landowner's right to the otherwise lawful and reasonable use of his or her property. For example, the proposed second section of the bill would prohibit, *inter alia*, any person from "engag[ing] in an activity" or "plac[ing] any . . . substance that would tend to . . . affect the behavior of a wild animal, with intent to prevent or hinder its lawful taking." This is so broad, that it would appear to prohibit a landowner from posting property and using food to attract wild animals with the purpose of providing a refuge from hunters.

Since we have answered the first question posed in the negative, we do not reach the second. We have not, in the limited time available to us, examined all possible issues which could be raised in respect of the proposed bill.

JOHN W. KING
DAVID A. BROCK
WILLIAM F. BATCHELDER
DAVID H. SOUTER
WILLIAM R. JOHNSON

May 8, 1986

*Backus, Meyer & Solomon,* of Manchester (*Jon Meyer*) filed a memorandum on behalf of the New Hampshire Civil Liberties Union in opposition to the constitutionality of House bill 148.

*Rep. Doris J. Riley,* Chairman of the House Committee on Fish and Game, filed materials in support of House bill 148.