512

BETH FICHTNER

v.

GORDON PITTSLEY, JR.

June 19, 2001

*Beth Fichtner, pro se*, filed no brief.

*Welts, White & Fontaine, P.C.*, of Nashua (*Michael J. Fontaine* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Gordon Pittsley, Jr., appeals a Nashua District Court (*Bamberger*, J.) order granting a petition for a restraining order filed by the plaintiff, Beth Fichtner. The defendant argues the court erred in: (1) awarding custody of the parties' minor child to the plaintiff; (2) finding that the plaintiff was abused within the meaning of RSA chapter 173-B (Supp. 2000); and (3) admitting into evidence a copy of an e-mail message purportedly sent by the parties' minor child to the plaintiff. We affirm in part and vacate in part.

Following an uncontested hearing in superior court, the parties were divorced in June 1999. The permanent stipulation, approved by the court, included awarding the defendant physical custody of the parties' minor child. The plaintiff was granted visitation rights.

On June 23, 2000, the plaintiff filed an *ex parte* domestic violence petition asserting that she was "in immediate danger of abuse by the Defendant" and alleging:

> [The defendant] has been very abusive in the past. He has threatened me over the phone — through my daughter. And my father. I received an e-mail from my daughter on 5/30/00 saying he was going to slice my throat. On 6-22-00 he phoned my father — and told him[] that he's not going to reco[g]nize me the next [time] he saw me. On 5-26-99 — He beat me to the point of hospitalization. Police were at my home this morn[ing] (6-23-00).

The plaintiff requested, among other things, that the district court issue a protective order and award her temporary custody of their minor child. Based on the facts alleged on the face of the petition, the district court granted the relief sought and scheduled a hearing for a final order. *See* RSA 173-B:4.

That same day the police removed the child from the defendant's home and placed her with the plaintiff. On June 26, 2000, the defendant filed a motion requesting that: (1) the court vacate its temporary order awarding custody to the plaintiff; (2) any remaining issues regarding custody be referred to superior court; and (3) the remaining allegations in the domestic violence petition be heard by the district court as scheduled or sooner. The district court scheduled all matters for a hearing the following day.

At the hearing, the plaintiff and her father testified about specific allegations of abuse. The defendant and his fiancée also testified. The court found that the plaintiff had "been abused as defined in RSA [chapter] 173-B" and issued a protective order that included awarding the plaintiff custody of the parties' minor child while permitting the defendant unsupervised visitation with the child. The court then transferred the matter to superior court for a review of the custody issue. The record, however, does not show that there were any subsequent proceedings in superior court.

Instead, the defendant moved in district court for reconsideration requesting the court vacate both the finding of abuse and the custody award. In awarding the plaintiff custody, the defendant argued that the district court exceeded its power to grant relief under the statute. *See* RSA 173-B:5, IV. He asserted that because an

order regarding custody had already been issued by the superior court pursuant to RSA chapter 458 (Supp. 2000), the district court lacked the authority to issue any order regarding custody.

The court denied each of the defendant's requests. In reaffirming its prior temporary custody order, the court "recognize[d] the limitations imposed by []RSA 173-B:5, IV," but determined that the legislature intended the court to liberally construe the statute to fulfill its purpose "to preserve and protect the safety of the family unit for all family or household members." Laws 1979, 377:1. In addressing its concern for the child's emotional welfare, the court expressed its belief that the immediate and long-term welfare of the child warranted awarding the plaintiff custody while allowing the defendant unsupervised visitation rights. "Although [the court found] the child was not in danger of immediate physical abuse [by the defendant], the Court was particularly concerned about the potential for emotional disorientation, . . . [especially in light of the fact] that the minor child had already been removed from the defendant pursuant to [the] Court's temporary orders . . . [and the] likelihood [remained] that the Superior Court . . . may well modify its orders with respect to the child's custodial status." The defendant subsequently filed this appeal. Immediately following oral argument, we issued an order vacating "[t]hat portion of the district court's domestic violence final order that award[ed] custody of the parties' minor child to the plaintiff."

We will first explain the reasoning behind our decision to vacate the custody order. Whether the district court exceeded its authority to grant relief under RSA 173-B:5 when it awarded the plaintiff custody is a question of law which we review *de novo*. *See* RSA 173-B:3, VI; *Byblos Corp. v. Salem Farm Realty Trust*, 141 N.H. 726, 729 (1997). When we interpret statutes, we first look to the plain meaning of the words used. *Appeal of Astro Spectacular*, 138 N.H. 298, 300 (1994). "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." *Appeal of Mascoma Valley Reg. School Dist.*, 141 N.H. 98, 100 (1996) (citations omitted).

RSA 173-B:5, I, provides that "[u]pon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse." This section specifically states that such relief may include "[a]warding temporary custody of the parties' minor children to either party or where appropriate, to the department [of health and human services.]" RSA 173-B:5, I, (b)(5). Thus, in appropriate situations, the district court may award temporary custody. This grant of authority,

however, is limited. RSA 173-B:5, IV clearly states: "No order made under this section shall supersede or affect any court order pertaining to . . . custody of children pursuant to RSA [chapters] 169-B, 169-C, or 169-D; support or custody made under RSA [chapter] 458; or custody of children of unwed parents as determined by a superior court, probate court, or family division court . . . ."

■ ■ Under this section, the district court is prohibited from modifying custody orders that have previously been judicially determined in any of the enumerated proceedings. In this case, the superior court had issued an order pertaining to custody under RSA 458:17. The plain language of RSA 173-B:5, IV prohibits the district court from issuing an order that would affect the custody award made under RSA chapter 458. Since the district court had no authority under RSA 173-B:5, IV to issue an order that affected the custody award made in June 1999 in the superior court, we vacated that part of the district court's order.

■ This is not to say that courts are unable to act expeditiously to provide for a child's general welfare. For example, in a situation such as this, where the district court was concerned about the emotional welfare of the child under an existing superior court order, the statute provides procedures for resolving issues raised in a petition brought under RSA chapter 173. RSA 173-B:2 provides district courts and superior courts with concurrent jurisdiction and further provides that one court may transfer the proceeding to another court "as the interests of justice or the convenience of the parties may require." RSA 173-B:2, III. In this case, where the district court was concerned with the child's general welfare under the existing custodial order, the court could have immediately transferred the proceedings to the superior court to be heard as if originally entered in the superior court. See RSA 173-B:4.

We next address whether the district court erred in finding that the plaintiff was abused within the meaning of RSA 173-B:1, I. On appeal, "[w]e review sufficiency of the evidence claims as a matter of law," In re Estate of Cass, 143 N.H. 57, 60 (1998) (quotation omitted), and uphold "the findings and rulings of the trial court unless they are lacking in evidential support or tainted by error of law," Phillips v. City of Concord, 145 N.H. 522, 524 (2000) (quotation omitted). See also RSA 173-B:3, VI. "We accord considerable weight to the trial court's judgments on the credibility of witnesses and the weight to be given testimony." In re Estate of Cass, 143 N.H. at 60 (quotation omitted).

After hearing the testimony of the plaintiff, her father, the defendant and his fiancée the trial court found that "[the plaintiff's] and her father's testimony was clear and unequivocal, and [the defendant] was at best, evasive." The trial court specifically found the plaintiff's father's testimony recounting the defendant stating "that if [he] found [the plaintiff] after dark, [her father] would not recognize his daughter was very persuasive . . . [and the defendant's] explanation as to that testimony . . . not as persuasive." The record supports these findings by the trial court.

We next consider the trial court's application of law to the facts. "Abuse" is defined as "the commission or attempted commission of one or more of the following [criminal] acts by a family or household member or current or former sexual or intimate partner and where such conduct constitutes a credible threat to the plaintiff's safety." RSA 173-B:1, I. Among the acts included in the list is criminal threatening as defined in RSA 631:4 (Supp. 2000). *See* RSA 173-B:1, I (b). A person has committed "criminal threatening" when he "threatens to commit any crime against the person of another with a purpose to terrorize any person." RSA 631:4, I (d). The plaintiff's father testified that during the course of a phone conversation, the defendant instructed him to relay several messages to his daughter and ended the conversation by stating "if I catch [your daughter] after dark, you won't recognize her the next time you see her." When asked whether he made such a threat, the defendant testified, "I don't recall. It was a very upsetting phone call." The trial court also heard testimony from the plaintiff, her father and the defendant of prior incidents of physical altercations between the defendant and the plaintiff. Based on this testimony, the trial court could reasonably conclude that the defendant's statement constituted criminal threatening and that the threat constituted a credible threat to the plaintiff's safety. Therefore, we affirm the district court's finding of abuse.

In reaching its decision, the district court did not rely on the e-mail message allegedly sent by the parties' child to the plaintiff; therefore, we decline to address whether it was properly admitted into evidence.

*Affirmed in part; vacated in part.*

BROCK, C.J., and BRODERICK and NADEAU, JJ., concurred.