Hillsborough District Court
No. 2003-362

THE STATE OF NEW HAMPSHIRE

v.

STEVEN KIDDER

Argued: January 14, 2004
Opinion Issued: February 27, 2004

*Peter W. Heed,* attorney general (*Stephen D. Fuller,* senior assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, and *Landya McCafferty,* assistant appellate defender, of Dover (*Ms. McCafferty* on the brief, and *Mr. Johnson* orally), for the defendant.

NADEAU, J. The Hillsborough District Court (*Hatfield,* J.) certified the following question pursuant to Supreme Court Rule 9:

> Does the defendant in this case, who is subject to a protective order issued by the District Court which prohibits third party contact with the victim by telephone, violate the order when the defendant's attorney, a member of the New Hampshire Bar in good standing, contacts the unrepresented protected person on behalf of the defendant?

For the reasons explained below, we answer this question affirmatively and remand.

The district court, following offers of proof and submission of various memoranda and pleadings, made the following findings of fact for the purpose of deciding this motion to dismiss. On January 21, 2003, the Manchester District Court (*Lyons,* J.) issued a temporary protective order against the defendant, Steven Kidder, in favor of the victim, Dawn Cassidy, who had filed a domestic violence petition. *See* RSA ch. 173-B. The protective order, in relevant part, read: "The defendant shall not have any contact with the plaintiff, whether in person or through a third party, including, but not limited [to], contact by telephone."

The defendant hired attorney Gregory Swope to represent him regarding the domestic violence matter pending before the district court. The defendant and attorney Swope knew that Cassidy had procured the protective order against the defendant. At the defendant's direction, attorney Swope contacted Cassidy to inform her that he represented the defendant, was calling on his behalf, and wanted to organize a meeting with all three parties present. Following the phone call, Cassidy, who was not represented by counsel, contacted the police, fearing that Swope and

the defendant "would talk her out of pursuing the domestic violence matter."

As a result, the State filed a class A misdemeanor complaint against the defendant alleging that he "did knowingly violate a Temporary Protective Order . . . in that [he] did establish third party contact with . . . Cassidy, by having Gregory Swope contact her regarding the said protective order." Swope filed a motion to dismiss the complaint and the State opposed the motion. Because this case concerns unresolved issues of New Hampshire law, the district court certified the question to this court.

The defendant argues that interpreting the provisions of RSA chapter 173-B to prohibit all third-party contact, including through an attorney, would lead to an absurd result. Specifically, he contends that imposing criminal penalties on a defendant for the legitimate actions of a third party such as a teacher or doctor, would lead to an absurd result and fails to further the purpose of the statute. The State contends that under the plain language of the statute, the defendant may properly be found guilty of violating a protective order if he knowingly contacts the victim through his attorney. We agree.

In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *In the Matter of Watterworth & Watterworth,* 149 N.H. 442, 445 (2003). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." *Fichtner v. Pittsley,* 146 N.H. 512, 514 (2001) (quotation and citation omitted).

RSA 173-B:4, I (2002), entitled "Temporary Relief," provides, in pertinent part, that "[u]pon a showing of an immediate and present danger of abuse, the court may enter temporary orders to protect the plaintiff with or without actual notice to the defendant." The court issuing the order may afford relief, including, but not limited to, "[r]estraining the defendant from contacting the plaintiff." RSA 173-B:4, I(a)(6) (2002). "Contact" is defined as "any action to communicate with another either directly or indirectly, including, but not limited to, using any form of electronic communication, leaving items, or causing another to communicate in such fashion." RSA 173-B:1, IV (2002). Knowingly violating a protective order issued under RSA chapter 173-B constitutes a class A misdemeanor. RSA 173-B:9, III (Supp. 2002). As defined in the Criminal Code, "A person acts knowingly with respect to conduct or to a circumstance that is a material

element of an offense when he is aware that his conduct is of such nature or that such circumstances exist." RSA 626:2, II(b) (1996).

The legislative history reveals that the legislature intended RSA chapter 173-B to be construed liberally. *See* N.H.H.R. JOUR. 649 (1999). "It is the public policy of this state to prevent and deter domestic violence through equal enforcement of the criminal laws and the provision of judicial relief for domestic violence victims." *Id.* at 648. A broad interpretation of the statute comports with the legislative purpose to "preserve and protect the safety of the family unit for all family or household members by entitling victims of domestic violence to immediate and effective police protection and judicial relief." *Id.* at 649.

█ We find that holding the defendant criminally responsible for knowingly contacting the holder of a protective order through his attorney effectuates this intent. Nothing in the plain language of the statute or the legislative history indicates a legislative intent to except "legitimate contact" by certain third parties. We hold that a trier of fact can find that the defendant violated the protective order if the trier of fact finds that the defendant knowingly contacted the unrepresented protected person through his attorney.

█ We caution, however, that while the defendant may properly be found guilty of violating a protective order when he knowingly contacts the victim through an attorney, teacher, doctor or other party, prosecutorial discretion should be exercised to distinguish between cases when a third party makes innocent contact with the protected party and those where the defendant uses a third party as a conduit.

The defendant argues the State's interpretation of RSA chapter 173-B renders it unconstitutional on its face and as applied, and therefore the State's interpretation should be rejected. We disagree. First, the defendant contends that the State's interpretation of RSA chapter 173-B is unconstitutionally overbroad. He argues it should not be construed to prohibit legitimate contact without a "purpose to harass, intimidate, or otherwise abuse the complainant." To further this argument, the defendant cites RSA 633:3-a, II(a) (Supp. 2003) as an example of a legitimate purpose exception explicitly carved out by the legislature, and *State v. Albers*, 113 N.H. 132 (1973), and *State v. Smith*, 127 N.H. 433 (1985), as examples of statutes that we have construed to avoid conflict with constitutional rights. All of these examples are distinguishable.

First, RSA 633:3-a, II(a), our stalking statute, specifically defines "course of conduct" to exclude "constitutionally protected activity" and "conduct that was necessary to accomplish a legitimate purpose

independent of making contact with the targeted person." If the legislature had intended "contact," as defined under RSA 173-B:1, IV, to exclude certain third party contact, it could have written the statute to reflect this objective. To the contrary, RSA 173-B:1, IV contains no exceptions to the definition of "contact." We refuse to consider what the legislature might have said or to add language that the legislature did not see fit to incorporate into the statute. *Watterworth*, 149 N.H. at 445. It is not the function of the courts to create legislation. *See In the Matter of Plaisted & Plaisted*, 149 N.H. 522, 526 (2003). We have consistently reserved matters of public policy for the legislature. *Id.*

Next, the defendant argues that under *Smith* and *Albers*, omission of a legitimate purpose exception renders RSA chapter 173-B overbroad. In *Smith*, we interpreted an earlier version of RSA 632-A:2 (Supp. 1983), entitled "Aggravated Felonious Sexual Assault," to implicitly contain a defense where the penetration of a child is necessary for the health, hygiene or safety of the child. *Smith*, 127 N.H. at 437. We created a legitimate purpose exception because RSA 632-A:2 was not intended to prevent benign penetration conducted for the medical treatment or safety of a child.

In contrast, RSA chapter 173-B was enacted with the intent "to preserve and protect the safety of the family unit for all family or household members by entitling victims of domestic violence to immediate and effective police protection and judicial relief." N.H.H.R. JOUR. 648-49. What the defendant fails to understand is that *any* contact with a victim of domestic violence, whether legitimate or not, may be perceived by the victim as harassment, intimidation or abuse. Accordingly, we will not create a legitimate purpose exception to the contact prohibited by the issuance of a protective order. Because RSA 173-B:1, IV does not attempt to control activities by means which invade areas of protected freedom, the statute is not overbroad. *Cf. Smith*, 127 N.H. at 439.

The defendant contends further that the State's interpretation of chapter 173-B criminalizes constitutionally protected activity. Specifically, he argues that the State's interpretation deprived him of his right to effective assistance of counsel and due process, thereby violating his federal and State constitutional rights. *See* U.S. CONST. amends. V, VI, XIV; N.H. CONST. pt. I, art. 15. We disagree.

We first address his claim under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1983), and cite federal authority for guidance only. *Id.* at 232-33.

The defendant argues that prohibiting his attorney from contacting the victim prevents him from adequately preparing his case, which includes investigating the facts and interviewing potential witnesses such as the victim. It is axiomatic that pretrial investigation is essential to effective assistance of counsel. *See Jones v. Jones*, 988 F. Supp. 1000, 1002 (E.D. La. 1997). At a minimum, a lawyer must "interview potential witnesses and . . . make an independent investigation of the facts and circumstances of the case." *Id.* (quotations omitted). The right to contact witnesses, however, may be restricted under certain circumstances. *See Reid v. Superior Court (People)*, 64 Cal. Rptr. 2d 714, 718 (Ct. App. 1997). For instance, a defendant's access to a witness may be curtailed to protect a witness from harassment or abuse. *Id.* at 720.

■ The defendant's due process rights and right to receive effective assistance of counsel do not confer upon him unfettered access to witnesses, especially when the witness is a victim of domestic violence and holds a protective order against him. *Cf. id.* at 720-21. Thus, on its face and as applied to the defendant, RSA chapter 173-B does not sweep within its ambit an appreciable amount of constitutionally protected conduct. *See Albers*, 113 N.H. at 139. Nor does it attempt to control activities by means which invade areas of protected freedom. *See Smith*, 127 N.H. at 439.

■ Further we emphasize that protective orders are orders of the court, not orders of the victim, and neither the defendant, the victim, nor a representative of either party has the authority to approve exceptions to the order. *See People v. Townsend*, 538 N.E.2d 1297, 1299 (Ill. App. Ct. 1989).

If the defendant has a legitimate reason to contact the victim, he is not without remedy. He can petition the court for an exception to or modification of the restraining order.

The defendant also contends that the temporary protective order impinged upon his fundamental liberty interest in raising and caring for his children. This argument is without merit, and does not warrant further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. *See Albers*, 113 N.H. at 139; *Smith*, 127 N.H. at 439; *NAACP v. Alabama*, 377 U.S. 288, 307-10 (1964). Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Remanded.*

DALIANIS and DUGGAN, JJ., concurred.