Exeter District Court
No. 2010-672

THE STATE OF NEW HAMPSHIRE

v.

NICHOLAS R. GARDNER

Submitted: September 15, 2011
Opinion Issued: November 2, 2011

*Michael A. Delaney*, attorney general (*Diana E. Fenton*, assistant attorney general, on the brief), for the State.

*Samdperil & Welsh, PLLC*, of Exeter (*Richard E. Samdperil* on the brief), for the defendant.

LYNN, J. The defendant, Nicholas R. Gardner, pleaded guilty to driving while intoxicated (DWI) in the Exeter District Court (*Cullen*, J.). *See* RSA 265-A:2 (Supp. 2010). On the date of the offense, he was nineteen years old. As part of his sentence, the defendant requested that his driver's license be revoked for twelve months but that he be allowed to seek suspension of six months of the revocation period provided he entered an impaired driver intervention program (IDIP) within 45 days after his conviction. The court denied the defendant's request, ruling that it did not have the authority to impose such a sentence. The defendant appeals. We affirm.

On appeal, the defendant argues that RSA 265-A:18, I(a)(4) (Supp. 2010), which allows courts to suspend six months of the nine-month mandatory minimum license revocation period for DWI defendants who are twenty-one years of age or older, applies equally to the twelve-month minimum revocation period specified in RSA 265-A:18, III (Supp. 2010) for DWI defendants under the age of twenty-one. We disagree.

Because a trial court's sentencing authority is statutory, we determine whether there was error by engaging in statutory interpretation. *State v. Pandelena*, 161 N.H. 326, 329 (2010). The interpretation of a statute

is a question of law, which we review *de novo. State v. Kousounadis*, 159 N.H. 413, 423 (2009). We are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole. *State v. Gallagher*, 157 N.H. 421, 422 (2008). We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used. *Kenison v. Dubois*, 152 N.H. 448, 451 (2005). When the language of a statute is clear on its face, its meaning is not subject to modification. *Dalton Hydro v. Town of Dalton*, 153 N.H. 75, 78 (2005). Further, we interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language it did not see fit to include. *State v. Hynes*, 159 N.H. 187, 193 (2009). If, however, statutory language is ambiguous and subject to more than one reasonable interpretation, we may consult its legislative history to determine the legislature's intent. *See Kousounadis*, 159 N.H. at 424. Finally, we interpret a statute in the context of the overall statutory scheme and not in isolation. *Id.* at 423. "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." *Fichtner v. Pittsley*, 146 N.H. 512, 514 (2001).

RSA 265-A:18, I(a)(1)-(6) establish the penalties for a DWI first offense. RSA 265-A:18, I(a)(4), the subparagraph of the statute addressing loss of the offender's driver's license, provides:

> The person's driver's license or privilege to drive shall be revoked for not less than 9 months and, at the discretion of the court, such revocation may be extended for a period not to exceed 2 years. The court may suspend up to 6 months of this sentence, provided that the person has entered into the relevant driver intervention program required by Subparagraph (3) within 45 days after conviction, or as soon thereafter as any extenuating circumstances approved by the department of health and human services allow[.]

However, for those who commit such an offense when under twenty-one years of age, the applicable provision of the statute is RSA 265-A:18, III, which states:

> Any person who is convicted of an offense under RSA 265-A:2, I, RSA 265-A:3, or RSA 630:3, II and the offense occurred while the person was under the age of 21 shall be sentenced according to the provisions of this section, except that in all cases the person's driver's license or privilege to drive shall be revoked for not less than one year.

Relying on the "shall be sentenced in accordance with this section" language, the defendant contends that paragraph III simply replaces the

nine-month license revocation period specified in subparagraph I(a)(4) with a one-year period when the offender is under the age of twenty-one at the time of the offense. This view finds some support in the fact that, although the first sentence of subparagraph I(a)(4) is written in terms that suggest nine months is a minimum mandatory revocation period ("license . . . shall be revoked for not less than 9 months") in the same way that paragraph III indicates one year is a minimum mandatory period for offenders under the age of twenty-one ("license . . . shall be revoked for not less than one year"), the second sentence of subparagraph I(a)(4) specifically allows up to six months of even this minimum mandatory revocation period to be suspended if a defendant seeks prompt enrollment in an IDIP. If, as paragraph III indicates, an offender under twenty-one is to be sentenced "in accordance with this section [*i.e.*, RSA 265-A:18]," except for the increased minimum mandatory revocation period, the second sentence of subparagraph I(a)(4) should also apply to such offender, permitting the court to suspend up to six months of the one-year minimum revocation period if the offender enters an IDIP within 45 days of conviction.

This argument, however, fails to take into account the phrase "in all cases" contained in the proviso clause of RSA 265-A:18, III. What is now RSA 265-A:18, III was first enacted in 2001; it was amended in 2004 in a manner not relevant to this appeal. *See* Laws 2000, 143:1; Laws 2003, 37:1 (former RSA 265:82-b, I-b (2004)). When this law was enacted, what is now RSA 265-A:18, I(a)(4) simply provided for a mandatory minimum revocation period of ninety days. *See* RSA 265:82-b, I(a)(3) (2000) (repealed 2006). Thus, when paragraph III first became law the phrase "in all cases" appears to have been superfluous language. That is, because there was no provision allowing for the suspension of *any* minimum mandatory revocation period, the proviso clause of paragraph III would have had the same meaning whether it read: "except that in all cases the person's driver's license or privilege to drive shall be revoked for not less than one year"; or instead stated, "except that the person's driver's license or privilege to drive shall be revoked for not less than one year." In other words, whether the "in all cases" language was included or not, the one-year minimum mandatory license revocation period would have applied to *all* DWI offenders under the age of twenty-one.

However, the situation changed when the legislature enacted Laws 2003, chapter 243. This legislation, which became effective on January 1, 2004, extended the minimum mandatory revocation period to nine months for offenders age twenty-one and older, and added the second sentence to what is now RSA 265-A:18, I(a)(4), permitting suspension of six months of the revocation period upon prompt entry into an IDIP. Significantly, Laws 2003, chapter 243 made no change to the language of what is now

paragraph III of the statute. Because the addition of the second sentence of subparagraph I(a)(4) created the possibility of a reduction of the mandatory minimum revocation period under certain circumstances, the effect of this amendment was to create an ambiguity regarding the meaning of paragraph III of the statute. On the one hand, the language indicating that a paragraph III offender "shall be sentenced in accordance with the provisions of this section" could be interpreted to mean that an offender under twenty-one is entitled to the benefit of subparagraph I(a)(4)'s suspension provision of the otherwise mandatory one-year license revocation, just as an offender age twenty-one or older is entitled to the benefit of the suspension provision of the otherwise mandatory nine-month revocation applicable to that offender. On the other hand, the "in all cases" language, the existence of which the legislature is presumed to have been aware when it amended subparagraph I(a)(4), *see* 1A N. SINGER & J.D. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 22.29 (7th ed. 2009), could be interpreted to mean that, notwithstanding that some offenders are now eligible for a six-month suspension of their minimum revocation period, *in no case* shall an offender under the age of twenty-one receive less than a one-year license suspension. Because both interpretations are reasonable, we examine legislative history to discern legislative intent. *Kousounadis*, 159 N.H. at 424.

The legislative history of Laws 2003, chapter 243 reveals that the legislature did not intend the option of a six-month suspension of the one-year minimum mandatory revocation for early treatment to apply to offenders under the age of twenty-one. The bill that became Laws 2003, chapter 243 was introduced in the House of Representatives as HB 521. In testimony before the Senate Judiciary Committee, Representative John Tholl, the primary sponsor of the bill, explained its purpose:

> This bill is basically an attempt by members of the study committee that lasted over two years in length to entice people into treatment. It provides a carrot and a stick. Basically, what it does is extend the revocation period of your license for a period of time. However, if you go into treatment in the early parts of your sentence and complete it within a certain time period, you can get the extended period dropped back to what it is currently now. In other words, your sentence would be no longer than the current penalties if you get into treatment early. If you don't, you can get an extended period of loss of license for not getting into treatment.

SENATE COMM. ON JUDICIARY, HEARING ON HB 521-FN (April 28, 2003) at 1-2 (Testimony of Rep. John E. Tholl, Jr.); *see also id.* at 4 ("So, we realize

the Senate is very reluctant to cut back on suspension time. We provided a carrot by increasing penalties and then taking the increase away. None of these penalties, removal of penalties, decreases the time now on the books in any way. It just takes back the increase that we provided in the bill. If you don't go to treatment within forty-five days and you don't have a good reason that is convincing to Health and Human Services, then you have to have your license suspended for another six months.") (testimony of Rep. Susan Almy); *id.* at 9 ("I think what we are trying to do here is all realize that we need to make sure treatment is available . . . . If we can get more folks into treatment quicker, I think that helps. But, we want to make sure from a safety standpoint and from law enforcement that we are not in any way modifying these penalties or minimizing them or lessening them in any way.") (testimony of Assistant Comm. of Safety John Stephen).

■ As the above testimony makes clear, the purpose of the legislation was to increase the minimum mandatory revocation period for offenders twenty-one and older by six months, while at the same time providing an option to have this additional six months suspended (so that the minimum revocation would revert to ninety days, as under the prior law) if the offender obtained early treatment. The sponsors and supporters of the bill emphasized time and again that there was no intent to reduce the minimum mandatory revocation period below what it was before the amendment was enacted. However, if, as the defendant argues, the suspension provision of RSA 265-A:18, I(a)(4) were applied to offenders under the age of twenty-one, the result would be to *decrease* the minimum suspension period under paragraph III of the statute from one year — as it was before the amendment — to six months. This result stems from the fact that the legislation did not increase the mandatory one-year revocation period for offenders under twenty-one. Nothing in the legislative history indicates that the legislature contemplated the possibility that the six-month suspension period would be applied so as to reduce the mandatory revocation period for offenders under age twenty-one to a period of less than one year, and given the specifically articulated "carrot and stick" approach of the amendment, it is unlikely that the legislature intended it to apply to offenders under twenty-one in the absence of a "stick" provision increasing the mandatory revocation period for such offenders by six months. Rather, in light of the legislative history, we conclude that the legislature intended the "in all cases" language of paragraph III to insure that the six-month suspension for early treatment option would not apply to the mandatory one-year license revocation period for offenders under the age of twenty-one.

*Affirmed.*

DALIANIS, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.